UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLARENCE THOMPSON, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:13-CV-446 NAB |
| | ) |
| TERRY RUSSELL, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This action is before the Court on Petitioner Clarence Thompson Jr.'s Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.] Respondent Terry Russell filed a Response. [Doc. 16.] Petitioner filed a Reply Brief. [Doc. 28.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 11.] For the reasons set forth below, Thompson's petition for writ of habeas corpus will be denied.

**I.      Background**

Thompson was convicted in a jury trial of two counts of statutory rape and two counts of statutory sodomy. Viewed in the light most favorable to the verdict, the evidence presented at trial established that E.C.[1] (Victim) was twelve years old at the time of the charged crimes and was living with Thompson, her godfather.[2] Victim and Thompson also lived with Victim's

---

[1] Because the records and transcripts include the names of minors, the Court will refer to the victim as Victim and the other minors by their initials.
[2] These facts are taken substantially from the Missouri Court of Appeals' decision in Thompson's direct appeal. *State v. Thompson*, 341 S.W.3d 723, 726-27 (Mo. Ct. App. 2011). A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254.

brother K.C., then eight years of age; Victim's mother; Thompson's wife; and Thompson's infant son.

Thompson began sexually abusing Victim in Arkansas when Victim was nine years old. Victim testified that Thompson touched her, raped her, and forced her to perform oral sex on him. On one occasion, when the families were living in Arkansas, K.C. walked into the living room and saw Thompson laying on top of and "humping" Victim with his pants down.

In May 2007, Thompson's and Victim's families moved from Arkansas to St. Louis County. Upon relocating to St. Louis, Thompson, Victim, and their families stayed for several weeks in a room at the Oak Grove Inn, a motel in South County. One night, when Victim awoke to use the bathroom, Thompson followed her into the bathroom and raped her. Another night at the Oak Grove Inn, Thompson lay on the air mattress Victim was sharing with K.C. and touched Victim's chest and vagina.

In September 2007, Victim's and Thompson's families were sharing a room in the basement of Thompson's sister's house. On September 24, 2007, Victim told her special education resource teacher, Sheronda Laden, "her stomach was hurting" and "it felt like something was wiggling in her stomach." Later that day, Victim told Ms. Laden that she needed to talk to her and confided that Thompson "was having sex with her" and "[h]e made her put his penis in her mouth, and if she told anyone, he was going to kill her mother and break her neck." Victim informed Ms. Laden that the abuse was occurring almost every night or every other night. Before sending Victim home that evening, Ms. Laden advised Victim not to bathe if Thompson abused her again.

Around 2:00 or 3:00 a.m. on September 25, 2007, Victim woke up to use the bathroom, which was on the main level of the house. When Victim reached the top of the stairs, Thompson

2

pulled her into the kitchen, started touching her chest, removed his shirt, pulled off Victim's clothes, and continued touching Victim's chest and vagina. Thompson then raped Victim on the kitchen floor.

When Victim arrived at school on September 25, 2007, she told Ms. Laden that "it happened again." Ms. Laden called the Division of Family Services (DFS). DFS and the police brought Victim to St. Louis Children's Hospital, where hospital staff administered a rape kit to collect physical evidence. At the hospital, Victim separately spoke to Detective Angela Bruno, a child abuse detective with the St. Louis County Police, and Stephanie Whitaker, a pediatric medical social worker in the hospital's emergency department. Victim told Ms. Whitaker that, early that morning, Defendant had pulled her into the kitchen, laid her on the floor, touched her vagina with his fingers, and "put his stuff in her vagina." Victim also told Ms. Whitaker that Defendant began abusing her when she was around nine years old.

Forensic scientists at the St. Louis County Police Department Crime Laboratory tested the items in the rape kit for bodily fluids and found sperm cells on the internal and external vaginal swabs and on Victim's underwear. The male DNA found on the vaginal swab and Victim's underwear matched Thompson's genetic profile.

The trial court conducted a jury trial in May 2010. At trial, the State presented the testimony of Victim, K.C., Ms. Laden, Ms. Whitaker, the emergency room nurse from St. Louis Children's Hospital who helped administer Victim's rape kit, the forensic interviewers at the Children's Advocacy Center (CAC) who interviewed Victim and K.C., and various police officers and forensic scientists involved in the investigation. The defense called as witnesses Thompson's wife, Thompson's sister, and Thompson's sister's boyfriend. At sentencing, Thompson received four concurrent life sentences on all counts. (Resp't Ex. I at 1003-1004.)

## II. Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* To obtain

habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

**III. Discussion**

Thompson's habeas petition presents four ineffective assistance of counsel claims and a fifth claim- whether the trial court abused its discretion in allowing the introduction of K.C.'s deposition testimony.

    **A.    Trial Court Error**

First, Thompson claims that the trial court erred in the admission of K.C.'s deposition testimony, because it lacked reliability. The admissibility of evidence is a matter of state law and does not form a basis for habeas relief unless the trial error is so great as to amount to a denial of due process. *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. "To meet this burden, a habeas petitioner must show that absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007). In making this determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986). "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

In this case, Missouri law allows for the introduction of hearsay testimony under Mo. Rev. Stat. § 491.075.[3] The state courts evaluated the admissibility of K.C.'s deposition testimony in light of § 491.075. On direct appeal, the state appellate court found that the admission of the testimony was not error, because the totality of circumstances surrounding K.C.'s testimony demonstrated that it was reliable and met the requirements for admission under § 491.075.[4] *Thompson*, 341 S.W.3d at 729-30. The state appellate court also found that there was overwhelming evidence of Thompson's guilt. *Id.* at 731. When viewed in consideration of all the evidence, the admission of K.C.'s deposition testimony does not rise to the level of a specific constitutional violation or amount to a denial of due process. Furthermore, the admission of K.C.'s deposition testimony was not outcome determinative, because there was DNA evidence and the testimony of the victim that specifically addressed the crimes charged. Therefore, the Court will deny habeas relief on this claim.

### B. Ineffective Assistance of Counsel Claims

Thompson brings three claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel. He asserts that trial counsel was ineffective for (1) failure to object to the state's evidence that victim was intellectually disabled[5], (2) failure to object and preserve for review the state's improper *voir dire* questioning, and (3) failure to object and preserve for review the state's repeated bolstering of witness, K.C. Thompson claims that

---

[3] Missouri law allows a statement by a child under the age of fourteen, or a vulnerable person, not otherwise admissible by statute or court rule, as substantive evidence to prove the truth of the matter asserted if the court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and the child or vulnerable person testifies at the proceedings, is unavailable as a witness; or is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child or vulnerable person unavailable as a witness at the time of the criminal proceeding. Mo. Rev. Stat. § 491.075.

[4] The state court also denied plain error review of Thompson's claims that admission of such testimony violated his rights to a fair trial, fully prepare a defense, and effectively cross-examine witnesses and the admission violated a state court rule. These claims are not reviewable by this Court. *See Hayes*, 766 F.2d at 1253.

[5] Thompson uses the term mentally retarded. This opinion uses the term "intellectually disabled" or "intellectual disability" to describe the same phenomenon. *See Hall v. Florida*, 134 S.Ct. 1986, 1990 (2014).

appellate counsel was ineffective for failing to assert a claim that the trial court erred in allowing K.C.'s deposition testimony to be entered into evidence.

### 1. Ineffective Assistance of Counsel Standard

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id.* To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id.* Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established

federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

### 2. Failure to Object regarding State's *Voir Dire* Questioning

Thompson states that his trial counsel was ineffective, because she failed to object to the prosecutor repeatedly seeking commitments from jurors as to how they would treat certain evidence. "No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 561 U.S. 358, 386 (2010). "The conduct of *voir dire* is generally left to the trial court's sound discretion." *Nicklasson v. Roper*, 491 F.3d 830, 835 (8th Cir. 2007). "*Voir dire* plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge cannot fulfill the responsibility to remove prospective jurors who may be biased and defense counsel cannot intelligently exercise peremptory challenges." *Ramsey v. Bowersox*, 149 F.3d 749, 756 (8th Cir. 1998) (citing *United States v. Spaar*, 748 F.2d 1249, 1253 (8th Cir. 1984)). "Although there are no constitutional provisions directly addressing the use of hypothetical questions during *voir dire*, there may be circumstances where a party's manner of conducting *voir dire* renders a jury impartial and thereby triggers a Sixth Amendment violation." *Hobbs*, 791 F.2d at 129.

Thompson's petition does not outline the specific questions he contests were improper by asking the jurors to commit how they would treat certain evidence. In his Amended Rule 29.15 motion, Thompson identified the following questions as improper:

> "And my question is, with testimonial evidence, one eye witness, are you going to be able to consider that if you

10

> believe that eye witness beyond a reasonable doubt? Is that going to be enough for you?"
>
> "…. There are no eye witnesses other than the victim … Would you be able to consider that?"
>
> "So would you require more than testimonial evidence?"
>
> "I've asked whether or not you can consider the evidence based on just testimony, victim testimony of a child, and I want to take it one step further and I want to ask if – your answer changes if that child is developmentally delayed?"
>
> "I mentioned or I asked whether your answer changes if you – if the child had special needs and I didn't – nobody raised their hands."
>
> "Would you require more if the person that went on the stand was mildly mentally retarded?"
>
> "What about mildly mentally retarded?"
>
> "What if there is absolutely no physical evidence? What if there is no DNA that links the defendant to this crime? Is there anyone who would have a difficult time [sic] render a verdict?"
>
> "We had talked quite a bit about whether or not you could base a decision based on testimonial evidence alone. In this case I expect that there will be more than testimonial evidence. There will be DNA evidence. There will be other types of evidence. Those of you who answered that you will not be able to base your decision on testimony alone would you be able to consider all of the evidence and base a decision from what you hear on the witness stand from each of the witnesses?"

(Resp't Ex. I at 257, 259-60, 262, 264-65, 270, 273-74.) The post-conviction motion court denied Thompson's claim and the Missouri Court of Appeals affirmed the denial. (Resp't Exs. D, H.) The state appellate court found that the questions were not improper, because the line of questioning was pertinent. (Resp't Ex. H at 6.) The state appellate court found that although multiple witnesses testified, the victim was the only eyewitness who testified to the ultimate facts

11

of the criminal acts and the DNA evidence was only relevant to the statutory rape charge from September 2007.

After a careful review of the state court record, the Court finds that relief should not be granted on this claim. The questions appear to ascertain whether the jurors could convict Thompson based on various types of evidence. *See Hobbs*, 791 F.2d at 129. The jurors were never asked to commit to a particular position regarding any of the evidence. It is extremely important for both sides to determine if a juror will follow the court's instructions. For example, if a juror required additional proof beyond the evidence presented at trial, including the minor victim's testimony going to the ultimate issue, that juror would be holding the state to a higher burden of proof, which goes against the court's instructions. Thompson's claim lacks merit and trial counsel cannot be found to be ineffective for failure to advance a non-meritorious claim. *Rodriguez v. U.S.*, 17 F.3d 225, 226 (8th Cir. 1994) (counsel's failure to advance a meritless argument cannot constitute ineffective assistance). The Court will deny relief on this claim.

### 3. **Procedurally Defaulted Ineffective Assistance of Counsel Claims**

Thompson has defaulted the three remaining ineffective assistance of counsel claims. "Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercuts the State's ability to enforce its procedural rules." *Murray v. Carrier,* 477 U.S. 478, 491 (1986). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. 722 at

750. To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray,* 477 U.S. at 488. For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance claim be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default in federal habeas proceedings. *Id*. at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim. *Id.*

Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Supreme Court has recognized a limited exception to this rule. In *Martinez v. Ryan*, the Supreme Court held:

> Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012). The Eighth Circuit has held that *Martinez* does not stand for the proposition that the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citing

13

*Martinez*, 132 S.Ct. at 1320) (holding does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings).

Thompson has failed to identify any reasons to excuse the procedural defaults of these claims. Therefore, the Court finds that these claims are not reviewable. Even if the claims were fully exhausted, all of the claims lack merit and relief would be denied on each claim as described below.

      **a.**     **Failure to Object and Preserve for Review Bolstering of K.C.'s Testimony**

Thompson contends that his attorney should have objected and preserved for review, the prosecution's bolstering of witness K.C. through the admission of his deposition testimony. K.C. provided deposition testimony on May 20, 2009. The trial court held a hearing on April 14, 2010 to determine the admissibility of testimony pursuant to § 491.075 at trial. (Resp't Ex. I at 7-90.) Thompson's counsel objected to the hearing, because all of the witnesses could not attend. (Resp't Ex. I at 8.) The trial judge overruled the objection and the hearing took place. During trial, Thompson's attorney made a continuing objection to any testimony by any witness testifying pursuant to § 491.075 in reference to the victim. (Resp't Ex. I at 603-608.) Thompson's attorney objected to K.C.'s testimony at trial. (Resp't Ex. I at 568.) Thompson's attorney also objected to the testimony of Megan Marietta regarding her interview with K.C. and the admission of the transcript and DVD of the interview. (Resp't Ex. I at 737, 739.) The transcript of K.C.'s deposition testimony was read at trial over Thompson's continuing objection. (Resp't Ex. I at 779-782.) Thompson asserted this claim in his Rule 29.15 post-conviction motion, but did not appeal the denial of the claim by the post-conviction motion court.

Federal habeas courts should not reexamine state court determinations on state law questions. *Estelle*, 502 U.S. at 67. "In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. In making this determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs*, 791 F.2d at 128.

In this case, Missouri law allows for the introduction of hearsay testimony under § 491.075. The state courts evaluated the admissibility of K.C.'s deposition testimony in light of § 491.075. The post-conviction motion court found that the admission of the testimony was not bolstering, because it was not wholly cumulative of anyone else's testimony. (Resp't Ex. D at 11.) The post-conviction motion court also noted that defense counsel made several objections to the testimony and that it was highly unlikely that any additional objections would have been successful or affected Thompson's right to a fair trial or appeal. (Resp't Ex. D at 12.) When viewed in consideration of all the evidence, the admission of K.C.'s deposition testimony does not rise to the level of a specific constitutional violation or amount to a denial of due process. K.C.'s attorney did not render ineffective assistance of counsel, because she properly objected to the testimony. Further, Thompson cannot show that his counsel's representation fell below an objective standard of reasonableness or that he was prejudiced by any failure to make additional objections to the ones made during pre-trial and trial proceedings. Therefore, Thompson's ineffective assistance of counsel claim is denied for being defaulted and lacking merit.

### b. Failure to Object to State's Evidence that Victim was "intellectually disabled"

Next, Thompson contends that his trial counsel was ineffective, because she failed to object to the state's evidence that Victim was intellectually disabled. Thompson asserts that evidence regarding Victim's intellectual disability was more prejudicial than probative. The post-conviction motion court held that trial counsel's approach to the Victim's developmental delays was clearly a strategic decision and that the record refuted Thompson's claims that his attorney was ineffective for failure to object to the evidence of Victim's intellectual disability. (Resp't Ex. D at 55.) Further, the post-conviction motion court found that this claim lacked prejudice, because there was overwhelming evidence of Thompson's guilt. (Resp't Ex. D at 55.)

"Reasonable performance of trial counsel includes an adequate investigation of the facts, consideration of viable theories, and development of evidence to support those theories." *Cagle v. Norris*, 474 F.3d 1090, 1097 (8th Cir. 2007). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the range of reasonable professional judgment." *Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014). A reviewing court "must look beyond the distorting effects of hindsight." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995). "A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown improvident." *Sherron*, 69 F.3d at 290 (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir.), *cert denied*, 474 U.S. 922 (1985)). The Sixth Amendment "does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 134 S.Ct. 10, 18 (2013).

Based on the Court's review of this claim, the Court finds that Thompson has failed to show that his counsel rendered ineffective assistance. Trial counsel cross-examined the state's

witnesses regarding Victim's developmental delays. Thompson has not shown that counsel's failure to object deprived him of a right to a fair trial. Further, there was overwhelming evidence of Thompson's guilt, especially considering the DNA evidence. Therefore, Thompson's ineffective assistance of counsel claim is denied for being defaulted and lacking merit.

### c. Appellate Counsel's Failure to Raise Issue that Trial Court Erred in Admission of K.C.'s Deposition Testimony.

Thompson's final ineffective assistance of counsel claim states that his appellate counsel was ineffective for failure to raise the issue that the trial court erred in admission of K.C.'s deposition testimony on appeal. In this case, the post-conviction motion court found that counsel was not ineffective for failure to appeal the trial court's admission of K.C.'s deposition testimony.

The Sixth Amendment includes a guarantee to the right of effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Thompson must satisfy both prongs of the *Strickland* test to prevail on his claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). Therefore, Thompson must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonably probability that the result would have been different absent the attorney's deficient performance. *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997). "Reasonable appellate strategy requires an attorney to limit the appeal to those issues counsel determines have the highest likelihood of success." *Gee*, 110 F.3d at 1352. "Importantly, if an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that meritless issue on appeal." *Kerns v. Bowersox*, No. 4:06-CV-1755 TCM, 2010 WL 1049841 at *13 (E.D. Mo. Mar. 18, 2010).

The Court has previously addressed Thompsons' claims regarding the admission of K.C.'s deposition and found habeas review is foreclosed on these claims. *See supra* Section III.A. Because the claim lacks substantial merit, Thompson cannot establish ineffective assistance of appellate counsel for failure to raise this claim on direct appeal. Thompson's claim is denied for being defaulted and lacking merit.

## IV. Conclusion

Based on the foregoing, the Court finds that Thompson's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Thompson's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Thompson has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Doc. 1.]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Clarence Thompson, Jr. for a Certificate of Appealability will be **DENIED**.

Dated this 23rd day of June, 2016.

                                            /s/ Nannette A. Baker
                                        NANNETTE A. BAKER
                                        UNITED STATES MAGISTRATE JUDGE